UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ANDRE COLE, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:05CV131 CDP |
| | ) | |
| DONALD P. ROPER, | ) | |
| | ) | |
| Respondent. | ) | |

# MEMORANDUM AND ORDER

Petitioner Andre Cole is currently on death row at the Potosi Correctional Center in Mineral Point, Missouri for the murder of Anthony Curtis. Petitioner was convicted by a jury and sentenced to death in St. Louis County, Missouri. He has filed a motion for limited discovery under Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts, seeking production of the St. Louis County Prosecutor's file regarding his prosecution and all materials used by the Prosecutor's office on jury selection training. This discovery relates to two of his twenty habeas claims. Because the discovery Petitioner seeks would not resolve a factual dispute which, if resolved in his favor, would entitle him to relief on these claims, I do not believe he has established good cause to conduct this discovery, and so I will deny the motion.

**I.    Background**

The parties have fully briefed the twenty claims raised by Petitioner in his petition for federal habeas corpus relief under 28 U.S.C. § 2254.  Now Petitioner seeks limited discovery on Claims 2C and 4 of his petition.  These claims are as follows:

> 2C.    Petitioner's Fifth, Sixth, Eighth and Fourteenth Amendment rights were violated when the prosecutor improperly argued facts not in evidence, unduly inflamed the jury, and falsely attacked Petitioner by calling him a "convicted killer."
>
> 4.    Mr. Cole was denied due process of law, and black veniremember Vernard Chambers was denied equal protection of the law, when the prosecution was permitted to strike Mr. Chambers for pretextual reasons under *Batson v. Kentucky*, 476 U.S. 79 (1986) -- leaving no blacks on the jury after the State had stricken all three from the panel.

**II.   Discussion**

**A.    Legal Standards**

Under 28 U.S.C. § 2254(d), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus shall not be granted unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding.

Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts states: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." The seminal case on discovery in federal habeas proceedings and the applicability of Rule 6(a) is the Supreme Court's ruling in Bracy v. Gramley, 520 U.S. 899 (1997).

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Id. at 904. The first step in determining if a petitioner is entitled to discovery under Rule 6(a) is identifying the "essential elements" of the petitioner's substantive claims. Id. Next, the court must evaluate whether petitioner has shown good cause for the requested discovery by determining if the petitioner's specific allegations give the court reason to believe that, if the facts are fully developed, petitioner will be able to demonstrate that he is entitled to relief. Id. at 908-09. When the petitioner has made such a showing "it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." Id.; see also Newton v. Kemna, 354 F.3d 776, 783 (8th Cir. 2004).

## B. Claim 2C: Prosecutor's Closing Argument

Petitioner contends that statements made by the Prosecutor in his closing argument were prejudicial to the Petitioner and made his trial fundamentally unfair. The Supreme Court has held that the proper evaluation of a prosecutor's arguments on closing is a determination of whether the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

The Eighth Circuit has provided a framework for determining whether a prosecutor's statement infected a trial with unfairness. Petitioner must first show that the prosecutor's statements were improper. United States v. White, 241 F.3d 1015, 1023 (8th Cir. 2001). Then a court should: "(1) Measure the type of prejudice that arose from the argument, (2) examine what defense counsel did in his [or her] argument to minimize prejudice; (3) review jury instructions to see if the jury was properly instructed; and (4) determine if there is a reasonable probability that the outcome of the sentencing phase would have been different, taking into account all the aggravating and mitigating circumstances." Weaver v. Bowersox, 438 F.3d 832, 838 (8th Cir. 2006)(citations omitted).

During the rebuttal portion of the State's guilt phase closing argument,

Petitioner alleges that the Prosecutor improperly argued facts not in evidence, unduly inflamed the emotions of the jury, and falsely attacked the Petitioner by calling him a "convicted killer," as contained in the following excerpt:

> Do not forget that he lied when you look at this case. Don't think somebody who killed wouldn't come in and lie. I'm going to ask you to think about two worlds have collided. Anthony Curtis, a tour guide from the museum. You can take that picture of Terri Cole. It shows her after the attack. She's Marcus' mom. She's Anthony's mom. She's a mom who worked for a health company doing clerical work and <u>he's a convicted killer</u>. He wants to make her into an attacker and they were sitting in the house with an alarm. . . .

(Tr. Transcript 1478) (emphasis added).

The State admits that this was not true, because at the time of the trial Petitioner had never been convicted of murder. But the State argues that the statement did not prejudice Petitioner. The Missouri Supreme Court noted that this claim was not preserved for direct appeal by a timely objection at trial, found no prejudice resulted from the misstatement, and held that there was no error of law based on the merits of the claim. <u>State v. Cole</u>, 71 S.W.3d 163, 170 (Mo. 2002).

In Petitioner's motion for limited discovery on this claim, he seeks to discover the contents of the St. Louis County Prosecutor's file regarding its prosecution of him. Petitioner is specifically interested in the file's documents showing the Prosecutor's preparation for, conduct during, and research regarding

his trial phase closing and rebuttal arguments, including but not limited to, handwritten notes taken before, during, and after such arguments.  Petitioner believes that these documents can help him demonstrate that the Prosecutor's misstatement was not a mere "slip of the tongue," as suggested by the State.

Petitioner makes no argument on how discovery of the Prosecutor's file will help him establish the essential elements of his claim, as required by Bracy.  In order to be entitled to habeas relief, Petitioner must demonstrate that the Prosecutor's statement infected the trial with unfairness.  The discovery Petitioner seeks is directed at proving that the Prosecutor's misstatement to the jury was intentional.  However, the Prosecutor's intent or motive in making the statement is irrelevant to understanding the effect of his statement on the fairness of the trial.

Under the Eighth's Circuit's framework for determining whether a prosecutor's statement infected a trial with unfairness, Petitioner cannot establish that, even if the additional discovery he seeks proves that the Prosecutor's statement was not inadvertent, he would be entitled to habeas relief.  Petitioner must first show that the statement is improper.  White, 241 F.3d at 1023.  The State has already admitted that the statement was improper, so this element has been established.  Next, the Court must review the circumstances of the improper statement, including the type of prejudice, defense counsel's attempts to minimize

prejudice, and the effect of the jury instructions, to determine if there is a reasonable probability that the sentence Petitioner received would have been different. Weaver, 438 F.3d at 838.

Determining whether the Prosecutor intentionally lied to the jury about Petitioner's status as a convicted killer will not help the Court in its analysis of the type of prejudice resulting from the statement, in its understanding of the impact of defense counsel's attempts to minimize that prejudice, or in evaluating the completeness of the jury instructions. Allowing discovery of this information would not help the Court to decide the Petitioner's claim; it would amount to a fishing expedition. See Murphy v. Johnson, 205 F.3d 809, 814 (5th Cir. 2000) ("Simply put, Rule 6 does not authorize fishing expeditions."). Based on the essential elements of Petitioner's claim 2C, there is no good cause to allow the requested discovery under Rule 6(a).

### C. Claim 4: Striking of Venireperson Chambers

Petitioner argues that the Prosecutor's use of a peremptory challenge to strike venireperson Vernard Chambers from the jury violated Batson v. Kentucky, 476 U.S. 79 (1986). According to Batson, the Equal Protection Clause of the United States Constitution prohibits using peremptory challenges to exclude jurors on the basis of race. 476 U.S. at 89. There is a three-step process for evaluating

whether the use of a peremptory challenge was based on purposeful discrimination. First, the defendant must make a prima facie case of racial discrimination. Second, after such a showing is made, the state must suggest a race-neutral explanation for the use of the strike. Third, after a race-neutral reason is offered, the trial court must decide whether the party objecting to the strike has proven purposeful discrimination. Purkett v. Elem, 514 U.S. 765, 767 (1995); United States v. Jones, 245 F.3d 990, 992 (8th Cir. 2001).

During Petitioner's trial, after defense counsel made the Batson challenge to the strike of venireperson Chambers, the Prosecutor offered the following reasons for why the strike was race-neutral:

> In general terms Mr. Chambers -- the State's primary concern with Mr. Chambers is that he is divorced. And because of the facts and the dynamics of case -- the record should reflect the State expects that the evidence that's introduced will show that Mr. Cole was divorced from his wife Terri Cole. There was a great deal of animosity between the two of them. I'm concerned that someone who is similarly situated to Mr. Cole in that he's divorced may be sympathetic to Mr. Cole and may not be sympathetic to Terri Cole, the victim in this case.
>
> My primary concern is I think sometimes when people are divorced there is a great deal of animosity that flows back and forth between the two parties. And I'm afraid Mr. Chambers would sympathize with the Defendant here and maybe give Terri Cole a degree of scrutiny that I'm not sure I want to be given to her in this case.

In addition to that, Your Honor, with regard to the death penalty he stated that he was not opposed to the death penalty, but not sure if he could do it or not.

Furthermore, he has a cousin doing life in prison for a murder in Michigan.

I will say this: I would like the record to reflect that Mr. Chambers -- I like Mr. Chambers. He was a juror in a case that I tried in Division 11, State versus Leo McLaughlin. He was a juror where a young man was charged with tampering with a victim in a felony murder prosecution or tampering with a witness, I should say, a Class C felony. And he was part of a jury that returned a verdict sentencing that Defendant, a young man, to 4 years -- or they recommended a sentence of 4 years in the Missouri Department of Corrections and a fine.

I found that to be a good State's oriented jury. But I'm very concerned about the fact that Mr. Chambers is divorced. And that's why I'm striking him.

(Tr. Transcript at 569-71). The Supreme Court of Missouri denied Petitioner's claim on direct appeal finding the Prosecutor's reasons for striking Chambers to be race-neutral and not pretextual. Cole, 71 S.W.3d at 173.

In his motion for limited discovery related to this claim, Petitioner seeks the production of: (1) the St. Louis County Prosecutor's file regarding its prosecution of him, which he believes is likely to contain jury seating charts, jury questionnaire forms, materials on training, instruction, and/or education regarding jury selection issues; and (2) all materials possessed by the St. Louis County

Prosecutor (including but not limited to documents, records, recordings, and tangible items) addressing training, instruction, and/or education regarding jury selection issues.[1]

Ordinarily, it is presumed that public officials are properly performing their official duties. Bracy, 520 U.S. at 909 (citations omitted). Here, Petitioner argues that recent developments in cases arising out of St. Louis County demonstrate that the Prosecutor's peremptory strikes at Petitioner's 2001 murder trial were race-based and not isolated incidents. Petitioner focuses on two Missouri Supreme Court rulings in death penalty cases where the court reversed based on finding that the prosecutor has purposefully discriminated in striking black jurors, in violation of Batson. State v. McFadden, 191 S.W.3d 648 (Mo. 2006) (hereinafter "McFadden I"); State v. McFadden, 216 S.W.3d 673 (Mo. 2007) (hereinafter "McFadden II"). One of the same prosecutors involved in the McFadden I case assisted in the prosecution of Petitioner Cole. In support of his argument that purposeful discrimination in jury selection is prevalent in the St. Louis County

---

[1] In support of his request, Petitioner cites a case from the Eastern District of Pennsylvania where the court allowed limited discovery on a habeas Batson claim of the prosecution's notes regarding race or gender and jury selection. Marshall v. Beard, No. Civ.A. 03-3308, 2004 WL 1925141 (E.D. Pa. Aug. 27, 2004). In the Pennsylvania case, however, the Batson issue had not been decided on the merits in the state court, and therefore the federal habeas review would be under the pre-AEDPA standard. Id. at *5. There is no dispute in this case that the state court decided Petitioner's Batson claim on the merits and the AEDPA standard applies.

Prosecutor's office, Petitioner points to comments made by the Missouri Supreme Court justices during oral argument on McFadden II on January 24, 2007. The justices expressed concern over the volume of Batson challenges originating from St. Louis County and the number of recent rulings reversing cases on the basis of actions by that Prosecutor's office in violation of Batson.[2]

The Missouri Supreme Court's recent remarks on the behavior of St. Louis County Prosecutors and their rulings in McFadden I and II do not amount to "specific allegations" to support a claim for limited discovery "*in petitioner's own case.*" Bracy, 520 U.S. at 909. In Bracy, the Supreme Court found that the conviction of the petitioner's trial judge for taking bribes in other cases was not sufficient to rebut the presumption that the public official act improperly in the case at issue. The Court required that the petitioner have some indication that the

---

[2] Petitioner submitted a recording of the oral arguments on McFadden II held on January 24, 2007 before the Missouri Supreme Court. The following excerpts are comments made by justices at that hearing (which justices made each comment is unknown):

Justice 1: It's disappointing that there are no African Americans on the jury again in St. Louis County. Now that's troublesome.
Justice 2: An awful lot of our Batson cases come from there.
Justice 1: All of them recently.
...
Justice 3: But that doesn't solve your problem because your problem is that we have a fairly repetitive pattern, as Judge Limbaugh indicated, of having a problem with St. Louis County. Because St. Louis County is a county, it's the county where I reside, that has a substantial African American community and we are having, we are seeing still all white juries and that's not mathematically probable.

same trial judge acted with bias in petitioner's own case.

There is no evidence to suggest improper conduct by the Prosecutor in Petitioner's case. Nor can we assume that the Missouri Supreme Court's reasoning in McFadden I and II would apply to benefit Petitioner in this case. None of the reasons deemed pretextual by the Missouri Supreme Court in McFadden are present here.[3] In this case, the Prosecutor asserted three reasons for his strike of venireperson Chambers: his divorced status, the Prosecutor's belief that he might not be able to recommend death, and his cousin's life sentence for murder. None of these three reasons are the same as those evaluated by the court in McFadden I. Similarly, in McFadden II the court found the prosecutor's stated reason of the juror's "crazy-looking red hair" to be pretextual. This does not help Petitioner's case here either.

In order to be entitled to habeas relief on his <u>Batson</u> claim, Petitioner must

---

[3] The race-neutral reasons given by the Prosecutor's office in McFadden I included claims that: a juror was not taking the process seriously because her cell phone rang during voir dire; a juror's stating it would be difficult for her to be absent from work; a juror's familiarity with the area of the crime; a juror's employment with the St. Louis School District; a juror's claim that she lived in a high crime area but had never heard gunshots; a juror's problems with the concept of acting in concert; a juror who knew a relative of a potential witness; a juror with an unrealistic view of scientific evidence; a juror who was described as elderly and opinionated; a juror who lived in a high crime area but denied that it was a high crime area; a juror with a health problem concerning her leg; a juror who thought she may have read about the case but couldn't remember any details; a juror with a relative who lived in the area of the crime; a juror who seemed to be agitated and confused about this role as a juror; a juror who lived close to the area of the crime but stated that he was not familiar with it; a juror who did not want to share the details of his relatives' law enforcement work; and a juror who appeared to be sleeping.

prove that the state court adjudication was contrary to or an unreasonable application of clearly established Federal law, or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Deciding whether federal law was correctly applied and whether the evidence was accurately deciphered by the state court will not require the additional evidence that Petitioner seeks here. I find no good cause to allow Petitioner's request for limited discovery under Rule 6(a) on his habeas claim 4.

## V.     Conclusion

Under the good cause standard established in Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts and further explained in the <u>Bracy</u> case, I find that Petitioner has not provided specific allegations that, if the facts are fully developed, will demonstrate that he is entitled to federal habeas corpus relief on claims 2C and 4 of his petition. Because I find no good cause to allow the discovery requested, I will deny Petitioner's motion.

**IT IS HEREBY ORDERED** that Petitioner's motion for limited discovery [#40] is DENIED.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 16th day of May, 2007.