# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| ANDRE COLE, | ) | |
| | ) | |
| Petitioner, | ) | **CAPITAL CASE** |
| | ) | |
| v. | ) | No. 4:05CV131 CDP |
| | ) | |
| CINDY GRIFFITH, | ) | |
| | ) | |
| Respondent, | ) | |

## MEMORANDUM, ORDER, AND STAY OF EXECUTION

Andre Cole is scheduled to be executed on April 14, 2015. He has filed a Supplemental Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and a motion to stay his execution. He claims that he is incompetent to be executed under *Ford v. Wainwright,* 477 U.S. 399 (1986) and *Panetti v. Quarterman,* 551 U.S. 930 (2007). He requests an evidentiary hearing to determine his competence.

The Missouri Supreme Court concluded that Cole was not entitled to an evidentiary hearing, but unlike other recent cases, it did not explicitly hold that he had failed to make a threshold showing of incompetence. Respondent argues that because the Missouri Supreme Court stated that Cole was competent and was not entitled to a hearing, it must have made the required determination. Cole, supported by the dissenting opinion of three Judges of the Missouri Supreme Court, asserts that the Court improperly combined the issue of a threshold showing

with improper fact-finding on the ultimate issue. I agree, and conclude that the state court's decision is an unreasonable application of federal law as determined by the United States Supreme Court. Because the decision of the Missouri Supreme Court was an unreasonable application of the law, this Court does not defer to its factual findings. I therefore conclude that Cole has made the requisite threshold showing, and is entitled to an evidentiary hearing on the issue of competence to be executed. He is also entitled to a stay of execution.

**Legal Standards**

In *Ford* the United States Supreme Court held that the "Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." Although the Court did not provide a standard for determining competency, in a concurring opinion, Justice Powell wrote that "the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are to suffer it." 477 U.S. at 422.

In *Panetti* the Court agreed with Justice Powell's definition, noting that "[a] prisoner's awareness of the State's rationale for an execution is not the same as a rational understanding of it." 551 U.S. at 959. The Supreme Court held that a rational understanding was required, although it declined to set a more precise standard, and instead directed the lower court to hold a hearing to determine

2

whether the petitioner's delusions "may render a subject's perception of reality so distorted that he should be deemed incompetent." *Id.* at 961-962.

Title 28 U.S.C. § 2254(d) limits this Court's review of state court decisions. A federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08.

In *Panetti*, the Court noted that Justice Powell's concurrence in *Ford* "constitutes 'clearly established' law for purposes of § 2254 and sets the minimum procedures a State must provide to a prisoner raising a *Ford*-based competency claim." 551 U.S. at 949. "Once a prisoner seeking a stay of execution has made 'a

3

substantial threshold showing of insanity,' the protection afforded by procedural due process includes a 'fair hearing' in accord with fundamental fairness." *Id.* (citing *Ford*, 477 U.S. at 426, 424).

## State Court Proceedings

The Missouri Supreme Court decided the issue of Cole's incompetence on the basis of exhibits filed by both Cole and respondent, and after consideration of evidence presented in the underlying criminal proceedings. *Missouri ex rel. Cole v. Griffith*, No. SC94880, Maj. Op., 6-12 (slip op. April 9, 2015).

Cole submitted a report by Dr. William S. Logan, a forensic psychiatrist, who interviewed him for two-and-one-half hours. Dr. Logan discussed Cole's mental state during the interview:

> In my examination on February 20, 2015 Mr. Cole was off several days on the date. He denied receiving any psychiatric medicines. He was able to recall the historical elements of the case, but as the interview progressed his thinking became more disorganized and he digressed to talking about his emotional state. He reported being depressed, overwhelmed and distracted by voices of individuals unfamiliar to him who gave him contradictory advice about legal issues and predict the future [sic], telling him to ignore his attorney, Mr. Luby and that he will be [in prison] the rest of his life. Sometimes he hears the voices through the TV. He believes these voices are supernatural. They make derogatory statements about him, his family and legal counsel and discuss how and whether he should kill himself. He cannot concentrate well enough to read as he is distracted by the voices. He sometimes hears repetitive phrases like "see see" or "smart ass." At times the voices have told him they are there to help him, or conversely, that they are working with the state. He believes the voices are trying to scare him with the death penalty

4

thing and have made it nearly impossible for him to sleep. His appetite also has decreased.

The voices have come through the intercom. He has heard them on the yard, in his cell, and even through his headphones, even if he turns up the volume to drown them out. Mr. Cole believes he is innocent, that the state knows this, and wants to execute him in order to "take me down." He believes the state talks to him through the TV.

Dr. Logan also reviewed his previous 4.33 hour examination of Cole in 2002 and "an extensive body of collateral material" included in his 2002 report. He further considered the report of another psychiatrist, which "documented recurrent episodes of major depression . . ." And he reviewed Cole's prison medical records, "which revealed an unexplained hunger strike which resulted in two hospitalizations in 2010." Dr. Logan concluded:

> Mr. Cole is depressed with prominent symptoms of psychosis which adversely affect his comprehension and understanding to the extent that his mental disease causes him to lack the capacity to understand the nature and purpose of the punishment about to be imposed upon him or matters in extenuation, arguments for executive clemency or reasons why the sentence should not be carried out. Mr. Cole's hallucinations have compromised his understanding to the point he has gross delusions which prevent him from comprehending or forming a rational understanding of the reason for the execution to which he has been sentenced.

Cole also submitted the affidavits of his current and former counsel who state that Cole's mental condition has deteriorated over the last four years and that he suffers from auditory hallucinations.

Respondent submitted the record of a routine wellness check conducted by Dr. Alwyn Whitehead, a psychologist employed by Corizon Medical Services.

5

The wellness check was conducted at Cole's cell door. Dr. Whitehead reported that Cole denied "any hallucinatory experiences and there were no overt symptoms of severe depression, mania, or psychosis." Dr. Whitehead conducted the entire wellness check in fifteen minutes.

Respondent also submitted recordings and transcripts from four telephone calls made by Cole to unknown persons, who are most likely family members. *Cole*, Majority Op. at 9 n. 6-7. During the phone calls, Cole discussed various topics, including execution issues in other states, that he was placed on "pre-execution" status, the execution drugs, his opinion that the prosecutor's story that he stabbed the victim while he had a gun did not make sense, and other things. *Id.* at 9-11.

Dr. Logan filed a supplemental report in which he reviewed respondent's briefs and exhibits. He concluded that none of respondent's evidence or arguments altered his opinions set out in his report dated March 12, 2015.

In its discussion, the Missouri Supreme Court stated:

> Neither *Ford* nor *Panetti* states that a prisoner is entitled to an evidentiary hearing to determine competency to be executed. Rather, *Ford* and *Panetti* hold that due process requires that a prisoner who makes a substantial showing of incompetency be provided an opportunity to be heard, which includes submission of "evidence and argument from the prisoner's counsel, including expert psychiatric evidence that may differ from the State's own expert psychiatric examination." *Ford*, 477 U.S. at 424, 427; *see also Panetti*, 551 U.S. at 949-950. In both *Ford* and *Panetti*, the state court proceedings were driven and controlled by the state without providing the prisoner

> an opportunity to be heard. *Ford*, 477 U.S. at 403-04; *Panetti*, 551 U.S. at 936-41.
>
> Unlike in *Panetti*, Mr. Cole has not been deprived of an opportunity to be heard. Mr. Cole initiated this proceeding by filing his writ petition in which he submitted his counsel's argument and his own evidence, including expert psychiatric evidence. Mr. Cole had the further opportunity to respond to the state's evidence with his counsel's argument and evidence. Because his petition for writ of habeas corpus is an original proceeding in this Court, pursuant to Rules 84.22 and 91.01, this Court is the factfinder. In this role, the Court considers Mr. Cole's argument and evidence in ruling on his writ petition. Accordingly, *even assuming* Mr. Cole's evidence makes a substantial showing of incompetency, he has received all the process to which he is entitled under *Ford* and *Panetti*.

*Id.* at 15-16 (footnote omitted; emphasis added).

In weighing the evidence, the state court faulted Cole's attorneys for not opining "about Mr. Cole's ability to understand his sentence and the reason for it." *Id.* at 17.

> Neither [counsel's] affidavits nor Dr. Logan's report explain what exactly is Mr. Cole's understanding of his scheduled execution or the reason to which he has been sentenced to death. By concluding the delusions prevent Mr. Cole from forming a rational understanding of the reason for execution, Dr. Logan may have found that Mr. Cole believed what the voices were saying with respect to his sentence. However, Dr. Logan did not include such a finding in his report.
>
> This Court is cautious of accepting Dr. Logan's conclusion. The circuit court presiding over Mr. Cole's post-conviction proceedings found Dr. Logan was not a credible expert and did not believe his report or testimony regarding Mr. Cole's mental state at the time of the offense. Additionally, Dr. Logan's reports were relied on by prisoners alleging incompetency precluding execution in *Middleton* and *Clayton*. Both times, this Court found flaws in Dr. Logan's reports and was not persuaded by his opinions that the prisoners were incompetent. Considering Dr. Logan's lack of credibility in previous

> proceedings in Mr. Cole's case and other cases before this Court, this Court does not give much weight to Dr. Logan's conclusion that Mr. Cole suffers gross delusions preventing him from rationally understanding the reason for his sentence when Dr. Logan fails to identify or explain Mr. Cole's understanding of his sentence.

*Id.* at 17-18.

Additionally, the court considered important the fact that Cole was not determined to be incompetent at the time of his trial. *Id.* at 18. The court found the telephone conversations to be significant, and concluded that his discussions about religion, in particular, showed that he understood everything:

> Most important, a review of the audio recordings of Mr. Cole's telephone conversations undermines his claims that his mental state has deteriorated or that he is suffering from delusions preventing him from rationally understanding his sentence. Instead, the recordings reveal that he has a rational understanding of his execution, including the reason for it.
>
> * * *
>
> If Mr. Cole believes the alleged voices telling him that he would be released and that state officials, like Prosecutor McCulloch, have authority to release him, Mr. Cole would not be so resolute in trusting God would help him.
>
> Not only do Mr. Cole's conversations regarding his faith raise questions about the authenticity of the alleged delusions but they also show he understands his execution. In *Ford*, the Supreme Court noted that a basic principle of civilized societies is that one is not put to death "who has no capacity to come to grips with his own conscience or deity." 477 U.S. at 409. Mr. Cole has demonstrated, however, that he is capable of coming to grips with his own deity.

*Id.* at 19-21 (footnote omitted).

8

In concluding its opinion, the court found that "Mr. Cole does not lack a rational understanding of the reason for his sentence." *Id.* at 21.

> According to the alleged voices, Mr. Cole is going to be executed because the state wants to "take him down." As already discussed, Mr. Cole's understanding of his execution, as demonstrated by recent telephone conversations and medical records, seriously undermines the authenticity of these voices. Further, the conversation on March 9, 2015, shows that Mr. Cole understands he was convicted of murder because he talks about the murder case. Immediately after discussing problems with the execution protocol, Mr. Cole explains how he believes there was a racial motive behind what happened to him, and then Mr. Cole and the caller discuss what they believe were inconstancies or lies in the prosecutor's version of the murder. The conversation demonstrates that Mr. Cole understands he was convicted for murder and that his sentence is the result of the conviction.
>
> Any such delusions that Mr. Cole may be suffering do not so impair his concept of reality that he cannot reach a rational understanding of his sentence and the reason for it. Therefore, he is not entitled to a declaration of incompetency *or an evidentiary hearing* under *Ford* and *Panetti*.

*Id.* at 21-22 (emphasis added).

Judge Laura Denvir Stith dissented. Her opinion identifies the procedures for determining whether a prisoner under a death warrant is competent to be executed: "first, a court must determine whether a substantial threshold showing has been made of incompetence. . . then there must be a second procedural step, a 'fair hearing' at which the prisoner can support his claim with further evidence . . ." *Griffith*, No. SC94880, Dissenting Op. at 4.

9

Judge Stith noted that "[t]he majority opinion cites to no authority to support its conflation of the threshold showing and the hearing stages of the *Panetti* analysis or for substituting this Court for a fact-finder on issues of credibility, and there is none." *Id.* at 2. She further stated that "[a] writ proceeding in an appellate court with no briefing or oral argument does not constitute a 'fair hearing.'" *Id.* at 11.

Regarding the majority's discussion of Cole's telephone calls, Stith stated:

> whether the ability to sometimes sound rational means one understands the nature and purpose of one's execution is a matter that comes within the province of expert testimony – testimony that the State could present at a hearing, but that this Court does not have the psychiatric skill to assess in the absence of such a hearing.

*Id.*

Judge Stith concluded that "a threshold showing has been made and [] this Court should refer this matter to a master for a fair hearing at which evidence may be presented.

## Discussion

The issues before the Court are two-fold: Was the state court decision that Cole was not entitled to a hearing an unreasonable application of federal law as determined by the United States Supreme Court? Is the state court's decision entitled to AEDPA deference? After careful review, I find that the state court's

decision not to hold a hearing was an unreasonable application of *Ford* and *Panetti*. Moreover, the court's decision is not entitled to AEDPA deference.

Judge Stith's dissent correctly analyzes the law. Both *Ford* and *Panetti* required the Missouri Supreme Court to refer the matter to a qualified fact-finder for a fair hearing at which each of the parties could present evidence relevant to Cole's competency. It is clearly established that a prisoner under a death warrant who makes a substantial showing of incompetency is entitled to a "'fair hearing' in accord with fundamental fairness." *Panetti*, 551 U.S. at 949 (citing *Ford*, 477 U.S. at 426, 424). Under *Panetti*, the court must first determine whether the petitioner has made a substantial threshold showing of incompetence.

Although the respondent argues that the Missouri Supreme Court did so here, it bases this argument not on any explicit statement, but on the conclusion stated on page 22 of the Court's opinion: "Therefore, he is not entitled to a declaration of incompetency or an evidentiary hearing under *Ford* and *Panetti*." But this conclusion follows the Court's evaluation of all the evidence, was a determination on the merits that Cole was in fact competent, and included the Court's making credibility determinations about the expert witness without any hearing or opportunity for Cole to present additional evidence. In contrast, in two other recent death penalty cases presenting issues of competence to be executed, the Missouri Supreme Court explicitly held that the petitioners had failed to make

11

the necessary threshold showing. *See Clayton v. Griffith*, ---S.W.3d---, 2015 WL 1442957, *1 (Mo. banc 2015) ("Addressing the merits of Clayton's petition, this Court finds that he has failed to make the threshold showing required by *Panetti* and *Ford* to justify staying his execution so that his competence can be determined after an evidentiary hearing."); *Middleton v. Russell*, 435 S.W.3d 83, 86 (Mo. banc 2014) ("Accordingly, this Court denies Middleton's petition for a writ of habeas corpus on the merits because he has failed to make a substantial threshold showing that he lacks the competence to be executed that the Eighth Amendment demands."). Unlike in *Clayton* and *Middleton*, the Missouri Supreme Court did not decide in this case whether the petitioner made a threshold showing of incompetence.

In *Panetti*, the district court remanded the action to the state court for an evidentiary hearing on Panetti's competence based on evidence similar to that produced by Cole:

> The state court had before it, at that time, petitioner's renewed motion to determine competency to be executed (hereinafter Renewed Motion To Determine Competency). Attached to the motion were a letter and a declaration from two individuals, a psychologist and a law professor, who had interviewed petitioner while on death row on February 3, 2004. The new evidence, according to counsel, demonstrated that petitioner did not understand the reasons he was about to be executed.

*Panetti*, 551 U.S. at 938.

Cole has presented the report of Dr. Logan, who conducted a two-and-one-half hour interview on March 12, 2015. Respondent has not submitted any expert testimony. The fifteen minute wellness check conducted by Dr. Whitehead from Cole's cell does not constitute reliable expert testimony on whether Cole is competent to be executed.

In *Panetti*, the state court unreasonably applied *Ford* because it relied upon court-appointed experts without allowing petitioner the opportunity to present conflicting evidence. *Id.* at 951-52.

> The state court failed to provide petitioner with a constitutionally adequate opportunity to be heard. After a prisoner has made the requisite threshold showing, *Ford* requires, at a minimum, that a court allow a prisoner's counsel the opportunity to make an adequate response to evidence solicited by the state court. In petitioner's case this meant *an opportunity to submit psychiatric evidence as a counterweight to the report filed by the court-appointed experts*. Yet petitioner failed to receive even this *rudimentary process*.
>
> In light of this error we need not address whether other procedures, such as the opportunity for discovery or for the cross-examination of witnesses, would in some cases be required under the Due Process Clause. As *Ford* makes clear, *the procedural deficiencies already identified constituted a violation of petitioner's federal rights*.

*Id.* at 952 (citations omitted; emphasis added). The actions of the Missouri Supreme Court in this case are very similar to those undertaken by the trial court in *Panetti*: the court considered the limited evidence before it, determined that it believed the respondent's evidence over that presented by petitioner, and decided

the petitioner was competent. The Missouri Supreme Court failed to comply with the clearly established dictates of *Ford* and *Panetti*.

The Missouri Supreme Court's alternate conclusion, that *even if* Cole had made the threshold showing he received all the process that was due him is also contrary to federal law established by the Supreme Court. Although the Supreme Court in *Panetti* did not list exactly what procedures should be followed at the at the "fair hearing," it made clear that an actual hearing, which must include notice and the opportunity to present evidence in addition to that of the "threshold showing," was required.

The state court found that Cole merely had an opportunity "to be heard." And it found that Cole was given that opportunity by filing a last-minute petition and motion to stay along with exhibits. The court then decided to give little weight to Dr. Logan's report without hearing any testimony. Although a court might very well reach the same credibility findings after a full hearing, the court's evaluation of the evidence before it did not constitute a fair hearing under *Ford* or *Panetti*.

The Missouri Supreme Court's decision is not entitled to deference. "When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires." *Panetti*, 551 U.S. at 953. In *Panetti*, the Court "consider[ed]

petitioner's claim on the merits and without deferring to the state court's finding of competency . . . [because] the factfinding procedures upon which the court relied were 'not adequate for reaching reasonably correct results' or, at a minimum, resulted in a process that appeared to be 'seriously inadequate for the ascertainment of the truth.'" *Id.* at 954 (quoting *Ford,* 477 U.S. at 423-24).

The fact-finding procedures employed by the Missouri Supreme Court were wholly inadequate for reaching reasonably correct results. "[T]he competency determination depends substantially on expert analysis in a discipline fraught with 'subtleties and nuances.'" *Ford*, 477 U.S. at 426. The state court was unreasonable in disregarding Dr. Logan's testimony in the absence of a conflicting qualified opinion. And its analysis of Cole's mental health based on four relatively short telephone calls, rather than a proper forensic evaluation by a qualified doctor, deprived Cole of basic due process.

In *Thompson v. Bell*, 580 F.3d 423 (6th Cir. 2009), the Court of Appeals for the Sixth Circuit found that the state court had unreasonably applied *Ford* because it found petitioner's severe delusions to be irrelevant. 580 F.3d at 436. And it further erred in disregarding petitioner's history of mental illness. *Id.* The Sixth Circuit concluded: "[r]egardless of whether Thompson's incompetency petition should be granted, his evidence has at least created a genuine issue about his competency, and therefore warrants an evidentiary hearing." *Id.*

In *Druery v. Texas*, 412 S.W.3d 523 (Tex. Crim. App. 2013), the trial court determined that defendant had not made a substantial showing of incompetence after holding an informal hearing. 412 S.W.3d at 538. The Court of Criminal Appeals of Texas found that the trial court denied defendant of due process:

> In conducting this informal inquiry, the trial judge should not weigh competing evidence of incompetency because the informal hearing is not the appropriate venue for determining the merits of the claim. Rather, the informal inquiry is intended to determine if the issue is sufficiently raised to merit a formal hearing. A determination that there is "some evidence" of incompetency then leads to a formal hearing before a jury. At that hearing, the defendant must prove his incompetence by a preponderance of the evidence.

*Id.* The court further stated that "if the trial court must resolve material factual disputes in making the threshold competency-to-be-executed determination, then the defendant has made a "substantial showing" of incompetency . . ." *Id.* at 541.

Although *Panetti* did not dictate all the procedures set out in *Druery* (including a jury trial allowed by that state's statutory scheme), the procedures shown by *Thompson* and *Drueuy* are representative of the procedural requirements for fairly determining competency. The fact that the Missouri Supreme Court was required to weigh the evidence and make credibility determinations was sufficient to trigger the need for a full evidentiary hearing.

The Missouri Supreme Court denied Cole the process he is due for an adequate and fair determination of his competency. Therefore, the motion to stay his execution is granted. See 28 U.S.C. § 2251(a)(1).

Accordingly,

**IT IS HEREBY ORDERED** that Cole's motion to stay his execution [ECF No. 114] is **GRANTED** and the execution scheduled for April 14, 2015 is **STAYED**.

                                            _____
                                            CATHERINE D. PERRY
                                            UNITED STATES DISTRICT JUDGE

Dated this 13th day of April, 2015.